JUDGE TORRES

13 CIV 8803



PREET BHARARA
United States Attorney for the
Southern District of New York
By: BRANDON H. COWART
Assistant United States Attorney
86 Chambers Street, 3rd Fl.
New York, New York 10007
Telephone: (212) 637-2693
Facsimile: (212) 637-2702
E-mail: brandon.cowart@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                  Plaintiff,

   -against-

FERNANDO PABLO VILLARREAL CANTU,
BLANCA B. DE VILLARREAL F/K/A BLANCA
GUADALUPE BALLESTEROS ALMAGUER,
CARNES VI –BA, S.A. DE C.V., EMPACADORA
VI – BA, S.A. DE C.V., INTERNACIONAL
GRAIN S.A. DE C.V., SALDAÑA Y GOMEZ
GRANOS Y SEMILLAS S.A. DE C.V.,
CENTRAL DE GRANOS DE LA LAGUNA S.A.
DE C.V., COMPAÑIA GANADERA VI – BA,
S.A. DE C.V., AND GRANOS ROLADOS, S.A.
DE C.V.,

              Defendants.

---

Case No. 13 Civ. _____

**COMPLAINT**

---

Plaintiff United States of America, by and through the United States Attorney's Office

for the Southern District of New York, alleges on information and belief as follows:

## INTRODUCTION

1.     This is an action seeking recovery of amounts due on promissory notes issued

pursuant to the Supplier Credit Guarantee Program ("SCGP") of the Agricultural Trade Act of

1978, as amended, 7 U.S.C. § 5622 *et seq.* The SCGP is administered by the Commodity Credit

Corporation ("CCC"), a federally chartered corporation within the United States Department of Agriculture.

2.      The CCC, pursuant to the SCGP, provides financial assistance to domestic exporters to increase exports of agricultural products grown in the United States.  The SCGP allows United States commodity exporters to access financing before payment is due from the foreign importer.  Under this program, exporters extend credit to importers, with repayment secured by a promissory note executed by the importer in favor of the exporter.  Exporters thereafter assign to a financial institution the importer's promissory note, with the CCC guaranteeing payment to the financial institution if the importer defaults on the promissory note. Eligibility requirements bar exporters from participating in the SCGP if they were directly or indirectly owned or controlled by the foreign importer, or by a person or entity that owned or controlled the importer.

3.      The United States is seeking to recover amounts due under 158 promissory notes issued by the Defendant importers pursuant to the SCGP.  The Defendant importers, all of which were owned and/or controlled by Defendant Fernando Pablo Villarreal Cantu, defaulted on their payment obligations under the promissory notes.  As a result, the United States made payment to the note holders per the CCC payment guarantee and was subrogated to all rights under the defaulted promissory notes.

4.      A chart summarizing the 158 defaulted promissory notes is attached as Exhibit 1. Exhibit 1 organizes the defaulted promissory notes according to (i) the defaulting importer issuing the note, (ii) the date when payment of the promissory note was due, and (iii) the total amount outstanding on all promissory notes which came due on a particular date.  This latter figure, the total amount outstanding, is comprised of three components:  (a) the total amount of

outstanding principal as of the due date, (b) the interest accrued on any outstanding principal as of the due date, and (c) the interest accrued on all amounts outstanding since the due date.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1345 and 28 U.S.C. § 3001 *et seq.*

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.  The relevant promissory notes and other agreements authorize suit to be brought in federal district court in any district in the State of New York for any claims pertaining to them.  Plaintiff United States of America elects to bring suit in the Southern District of New York.

7.      Each of the relevant promissory notes and guarantees further provides that the substantive law of the State of New York applies.

## PARTIES

8.      Plaintiff is the United States of America.  The Commodity Credit Corporation, a federally chartered corporation within the United States Department of Agriculture, is responsible for administering loans issued pursuant to the SCGP.

**Guarantor Defendants**

9.      Defendant Fernando Pablo Villarreal Cantu ("Villarreal") is a Mexican citizen who, throughout the relevant time period up to the present, has resided in Mexico.  Villarreal oversaw substantial business interests involving the grain and cattle industries in Mexico and the United States.  Villarreal is a signatory of agreements guaranteeing payment of amounts due under 28 promissory notes which were issued pursuant to the SCGP.  The 28 promissory notes were provided by one of the defendant importers, Empacadora VI – BA, S.A. de C.V. ("Empacadora"), in favor of one of the Exporters, USA Grain Co., Inc. ("USA Grain").

10.     Defendant Blanca B. de Villarreal f/k/a Blanca Guadalupe Ballesteros Almaguer ("Blanca Villarreal") is a Mexican citizen residing in Mexico, the wife of Villarreal, and a signatory of agreements guaranteeing payment of amounts due under promissory notes issued by Empacadora in favor of USA Grain.

11.     Defendant Carnes VI-BA, S.A. de C.V. ("Carnes") is an entity owned and/or controlled by Villarreal and a signatory of agreements guaranteeing payment of amounts due under promissory notes issued by Empacadora in favor of USA Grain.

**The Exporters**

12.     The Exporters are USA Grain Co., Inc. ("USA Grain"), USA Meat & Grain Company, Inc. ("USA Meat & Grain"), Virgo Commodities Corp. ("Virgo"), Mid-Valley Grain Co. ("Mid-Valley Grain"), Alamo Feeders, Inc. ("Alamo Feeders"), and The Laredo Grain Company ("Laredo") (collectively, the "Exporters).

13.     Each Exporter was an entity organized under the laws of the State of Texas with its principal place of business in Texas.

14.     Each Exporter was a participant in the SCGP.

15.     The Exporters entered into contracts to sell U.S. agricultural products to the Importers.  The Exporters extended credit to the Importers, with repayment secured by promissory notes signed by the Importers in favor of the Exporters.  Pursuant to the SCGP, the CCC issued to the Exporters a guarantee securing repayment to the Exporter of 65 percent of the promissory note value.

16.     Each Exporter was owned and/or controlled by Villarreal.

17.     The Exporters are now all defunct and have either been dissolved or forfeited their corporate status.

**The Importer Defendants**

18.     The Importer defendants are Empacadora, Internacional Grain S.A. de C.V. ("Internacional Grain"), Saldaña y Gomez Granos y Semillas S.A. de C.V. ("Saldaña"), Central de Granos de la Laguna S.A. de C.V. ("Central"), Compañia Ganadera VI-BA, S.A. de C.V. ("Ganadera"), and Granos Rolados, S.A. de C.V. ("Rolados") (collectively, the "Importers).

19.     Each Importer was an entity organized and existing under the laws of the United Mexican States, with each of them having its principal place of business in Mexico.

20.     Each Importer was owned and/or controlled by Villarreal.

**The Lenders**

21.     The Lenders are Sterling Bank, BNP Paribas, Houston Agency (a subsidiary of BNP Paribas SA) ("BNP Paribas"), and JP Morgan Chase ("Chase").

22.     For the promissory notes at issue, before the Importers' payment on the commodity purchases were due, the Exporters assigned to the Lenders their rights to receive payment on the promissory notes, as well as the associated payment guarantees issued by the CCC.

## BACKGROUND

23.     The SCGP is an export credit guarantee program administered by the CCC.  As set forth in extensive regulations, 7 C.F.R. § 1493.400 *et seq*, the SCGP is designed to make credit available to U.S.-based exporters to finance the sale of domestic commodities abroad. The exporters sell commodities on credit to importers, with payment secured by promissory notes issued by the importer.  The promissory notes must be dollar denominated, be signed by the foreign importer in favor of the U.S. exporter, and require payment in full within 180 days.

24.     To obtain a payment guarantee from the CCC, the exporter must be accepted into the SCGP.  To be eligible, exporters must satisfy, *inter alia*, the Independence Requirement which bars from the program any exporter directly or indirectly owned or controlled by the importer or by a person or entity that owns or controls the importer.

25.     Once accepted into the SCGP, the exporter may request that the CCC issue a payment guarantee for a particular export sale agreement.   The guarantee offered by the CCC pursuant to the SCGP ensures payment by the USDA to the exporter (or its assignee) of up to 65 percent of the expected value of a particular export sale agreement, with such value being determined at the time of submission of the application to the CCC for a payment guarantee or 65 percent of the actual shipment value, if that is less, of the commodity being purchased (the "CCC Guarantee").

26.     After the CCC Guarantee is issued, the exporter is required to provide the CCC with a report evidencing export of each commodity shipment.  If the importer defaults under the applicable promissory note, the exporter or its assignee must notify the CCC of the default not later than 10 calendar days after the due date of the payment.  Thereafter, the holder of the CCC guarantee has up to six months to file a claim for loss with the CCC.  As part of the claim filing process, the holder of the CCC Guarantee submits an instrument satisfactory to the CCC by which the CCC is subrogated to the respective rights of the exporter or the exporter's assignee. The CCC thereafter makes payment to the exporter or its assignee for up to 65 percent of the export value or the actual shipment value, whichever is less.

27.     Through the SCGP, U.S. exporters may obtain payment sooner than the due date of a particular promissory note by assigning the importer's promissory note and the CCC Guarantee to a financial institution such as, in this case, Sterling Bank, BNP Paribas, and Chase.

## CAUSES OF ACTION

### First Claim For Relief
### (Collection of Amounts Owed by Defendant Empacadora)

28.     During the Relevant Time Period, USA Grain and Empacadora entered into several export sales agreements whereby USA Grain agreed to sell to Empacadora various quantities of commodities on credit, with Empacadora executing a promissory note in favor of USA Grain to finance the purchase (the "USA Grain – Empacadora Promissory Notes").

29.     USA Grain obtained payment guarantees from the CCC securing payment of 65 percent of the principal of the USA Grain – Empacadora Promissory Notes.

30.     USA Grain in turn assigned its interests in USA Grain – Empacadora Promissory Notes and the corresponding CCC payment guarantees to Sterling Bank.

31.     Each USA Grain – Empacadora Promissory Note is identical in nature except for the amounts borrowed under the note, the date the note matures, and the interest rate applicable to amounts outstanding.

32.     For each of the USA Grain – Empacadora Promissory Notes, USA Grain provided to the CCC a report purporting to document the sale and export of commodities.  In these reports, USA Grain falsely represented that it satisfied the Independence Requirement with respect to Empacadora.

33.     Empacadora defaulted on its payment obligations with respect to 28 USA Grain – Empacadora Promissory Notes.  Sterling Bank, as assignee, filed claims for loss with the CCC.

34.     With respect to the defaulted USA Grain – Empacadora Promissory Notes, the CCC made payment to Sterling Bank under the CCC Guarantee and was subrogated to the rights of Sterling Bank.

35.     The CCC has not received payment due under the defaulted USA Grain-Empacadora Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

36.     Under the defaulted USA Grain – Empacadora Promissory Notes, as of December 1, 2013, Empacadora owes the United States $15,207,434.75, an amount reflecting any unpaid principal as of the due date, interest accrued on the unpaid principal up to the due date, and late interest accruing on the amount of unpaid principal and interest from the due date going forward, at the default rate specified in the USA Grain – Empacadora Promissory Notes. *See* Ex. 1.

**Second Claim For Relief**
**(Collection of Amounts Owed by Defendant Internacional Grain)**

37.     During the Relevant Time Period, U.S.A. Meat & Grain and Internacional Grain entered into several export sales agreements whereby U.S.A. Meat & Grain agreed to sell to Internacional Grain various commodities on credit, with Internacional Grain executing a promissory note in favor of U.S.A. Meat & Grain to finance the purchase (the "U.S.A. Meat & Grain – Internacional Grain Promissory Notes").

38.     U.S.A. Meat & Grain obtained payment guarantees from the CCC securing payment of 65 percent of the principal of the U.S.A. Meat & Grain – Internacional Grain Promissory Notes.

39.     U.S.A. Meat & Grain in turn assigned its interests in the U.S.A. Meat & Grain – Internacional Grain Promissory Notes and the corresponding CCC payment guarantees to BNP Paribas.

40.     Each of the U.S.A. Meat & Grain – Internacional Grain Promissory Notes is identical in nature except for the amounts borrowed under the note and the date the note matures, and the interest rate applicable to amounts outstanding.

41.     For each of the U.S.A. Meat & Grain – Internacional Grain Promissory Notes, U.S.A. Meat & Grain provided to the CCC a report purporting to document the sale and export of the commodities.  In each of these reports, U.S.A. Meat & Grain falsely represented that it satisfied the Independence Requirement with respect to Internacional Grain.

42.     Internacional Grain defaulted on its payment obligations to BNP Paribas with respect to 92 U.S.A. Meat & Grain – Internacional Grain Promissory Notes.  For each defaulted note, BNP Paribas, as assignee, filed a claim for loss with the CCC.

43.     With respect to the defaulted U.S.A. Meat & Grain – Internacional Grain Promissory Notes, the CCC made payment to BNP Paribas under the CCC Guarantee and was subrogated to the rights of BNP Paribas.

44.     The CCC has not received payment due under the defaulted Meat & Grain – Internacional Grain Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

45.     Under the defaulted U.S.A. Meat & Grain – Internacional Grain Promissory Notes, as of December 1, 2013, Internacional Grain owes the United States $62,390,241.14, an amount reflecting any unpaid principal as of the due date, interest accrued on the unpaid principal up to the due date, and late interest accruing on the amount of unpaid principal and interest from the due date going forward, at the default rate specified in the U.S.A. Meat & Grain – Internacional Grain Promissory Notes.  *See* Ex. 1.

### Third Claim for Relief
### (Collection of Amounts Owed by Defendant Saldaña)

46.     During the relevant time period, Virgo and Saldaña entered into several export sales agreements whereby Virgo agreed to sell to Saldaña various commodities on credit, with Saldaña executing promissory notes in favor of Virgo to finance the purchase (the "Virgo – Saldaña Promissory Notes").

47.     Virgo obtained payment guarantees from the CCC securing payment of 65 percent of the principal of the Virgo – Saldaña Promissory Notes.

48.     Virgo in turn assigned its interests in the Virgo – Saldaña Promissory Notes and the corresponding CCC payment guarantees to Chase.

49.     Each of the Virgo – Saldaña Promissory Notes is identical in nature except for the amounts borrowed under the note, the date the note matures, and the interest rate applicable to amounts outstanding.

50.     For each Virgo – Saldaña Promissory Note, Virgo provided the CCC a report purporting to document the sale and export of commodities.  In each report, Virgo falsely represented that it satisfied the Independence Requirement with respect to Saldaña.

51.     Saldaña defaulted on its payment obligations to Chase with respect to 64 Virgo – Saldaña Promissory Notes.  For each defaulted note, Chase, as assignee, filed a claim for loss with the CCC.

52.     With respect to the defaulted Virgo – Saldaña Promissory Notes, the CCC made payment to Chase under the CCC Guarantee and was subrogated to the rights of Chase.

53.     The CCC has not received payment due under the defaulted Virgo – Saldaña Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

54.     Under the defaulted Virgo – Saldaña Promissory Notes, as of December 1, 2013,

Saldaña owes the United States $46,109,994.38, an amount reflecting any unpaid principal as of

the due date, interest accrued on the unpaid principal up to the due date, and late interest

accruing on the amount of unpaid principal and interest from the due date going forward, at the

default rate specified in the Virgo – Saldaña Promissory Notes. *See* Ex. 1.

**Fourth Claim for Relief**
**(Collection of Amounts Owed by Defendant Central)**

55.     During the Relevant Time Period, Mid-Valley Grain and Central entered into

several export sales agreements whereby Mid-Valley Grain agreed to sell to Central various

commodities on credit, with Central executing a promissory note in favor of Mid-Valley Grain to

finance the purchase (the "Mid-Valley Grain – Central Promissory Notes").

56.     Mid-Valley Grain obtained payment guarantees from the CCC securing payment

of 65 percent of the principal of the Mid-Valley Grain – Central Promissory Notes.

57.     Mid-Valley Grain in turn assigned its interests in the Mid-Valley Grain – Central

Promissory Notes and the corresponding CCC payment guarantees to BNP Paribas.

58.     Each of the Mid-Valley Grain – Central Promissory Notes is identical in nature

except for the amounts borrowed under the note, the date the note matures, and the interest rate

applicable to amounts outstanding.

59.     For each Mid-Valley Grain – Central Promissory Note, Mid-Valley Grain

provided to the CCC a report purporting to document the sale and export of the commodities.  In

each report, Mid-Valley Grain falsely represented that it satisfied the Independence Requirement

with respect to Central.

60.     Central defaulted on its payment obligations to BNP Paribas with respect to 42 Mid-Valley Grain – Central Promissory Notes. For each defaulted note, BNP Paribas, as assignee, filed a claim for loss with the CCC.

61.     With respect to the defaulted Mid-Valley Grain – Central Promissory Notes, the CCC made payment to BNP Paribas under the CCC Guarantee and was subrogated to the rights of BNP Paribas.

62.     The CCC has not received payment due under the defaulted Mid-Valley Grain – Central Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

63.     Under the defaulted Mid-Valley Grain – Central Promissory Notes, as of December 1, 2013, Central owes the United States $58,978,477.86, an amount reflecting any unpaid principal as of the due date, interest accrued on the unpaid principal up to the due date, and late interest accruing on the amount of unpaid principal and interest from the due date going forward, at the default rate specified in the Mid-Valley Grain – Central Promissory Notes. *See* Ex. 1.

### Fifth Claim for Relief
### (Collection of Amounts Owed by Defendant Ganadera)

64.     During the Relevant Time Period, Alamo and Ganadera entered into several export sales agreements whereby Alamo agreed to sell to Ganadera various commodities on credit, with Ganadera executing a promissory note in favor of Alamo to finance the purchase (the "Alamo – Ganadera Promissory Notes").

65.     Alamo obtained payment guarantees from the CCC securing payment of 65 percent of the principal for each of the Alamo – Ganadera Promissory Notes.

66.     Alamo in turn assigned its interests in the Alamo – Ganadera Promissory Notes and the corresponding CCC payment guarantees to BNP Paribas.

67.     Each Alamo – Ganadera Promissory Note is identical in nature except for the amounts borrowed under the note, the date the note matures, and the interest rate applicable to amounts outstanding.

68.     For each Alamo – Ganadera Promissory Note, Alamo provided to the CCC a report purporting to document the sale and export of the commodities.  In these reports, Alamo falsely represented that it satisfied the Independence Requirement with respect to Ganadera.

69.     Ganadera defaulted on its payment obligations to BNP Paribas with respect to 88 of the Alamo – Ganadera Promissory Notes.  For each defaulted note, BNP Paribas, as assignee, filed a claim for loss with the CCC.

70.     The CCC made payment to BNP Paribas under the CCC Guarantee and was subrogated to the rights of BNP Paribas.

71.     The CCC has not received payment due under the defaulted Alamo – Ganadera Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

72.     Under the defaulted Alamo-Ganadera Promissory Notes, as of December 1, 2013, Ganadera owes the United States $58,086,942.64, an amount reflecting any unpaid principal as of the due date, interest accrued on the unpaid principal up to the due date, and late interest accruing on the amount of unpaid principal and interest from the due date going forward, at the default rate specified in the Alamo – Ganadera Promissory Notes. *See* Ex. 1.

## Sixth Claim For Relief
### (Collection of Amounts Owed by Defendant Rolados)

73.     During the relevant time period, Laredo and Rolados entered into several export sales agreements whereby Laredo agreed to sell to Rolados various commodities on credit, with Rolados executing a promissory note in favor of Laredo to finance the purchase (the "Laredo – Rolados Promissory Notes").

74.     Laredo obtained payment guarantees from the CCC securing payment of 65 percent of the principal of the Laredo – Rolados Promissory Notes.

75.     Laredo in turn assigned its interests in the Laredo – Rolados Promissory Notes and the corresponding CCC payment guarantees to BNP Paribas.

76.     Each Laredo – Rolados Promissory Note is identical in nature except for the amounts borrowed under the note, the date the note matures, and the interest rate applicable to amounts outstanding.

77.     For each Laredo – Rolados Promissory Note, Laredo provided the CCC a report purporting to document the sale and export of the commodities.  For each of these reports, Laredo falsely represented that it satisfied the Independence Requirement with respect to Ganadera.

78.     Rolados defaulted on its payment obligations to BNP Paribas with respect to 16 Laredo – Rolados Promissory Notes.  For each defaulted note, BNP Paribas, as assignee, filed a claim for loss with the CCC.

79.     With respect to the defaulted Laredo – Rolados Promissory Notes, the CCC made payment to BNP Paribas under the CCC Guarantee and was subrogated to the rights of BNP Paribas.

80.     The CCC has not received payment due under the defaulted Laredo – Rolados Promissory Notes, and all conditions necessary to the CCC's enforcement of its rights under the notes have occurred.

81.     Under the defaulted Laredo – Rolados Promissory Notes, as of December 1, 2013, Rolados owes the United States $19,623,487.80, an amount reflecting any unpaid principal as of the due date, interest accrued on the unpaid principal up to the due date, and late interest accruing on the amount of unpaid principal and interest from the due date going forward, at the default rate specified in the Laredo – Rolados Promissory Notes. *See* Ex. 1.

## Seventh Claim For Relief
### (Collection of Amounts Owed by Defendants Villareal, Blanca Villareal and Carnas)

86.     Defendants Villareal, Blanca Villareal and Carnes entered into agreements whereby each of them agreed to absolutely, irrevocably and unconditionally guarantee the prompt payment of all amounts due under the USA Grain – Empacadora Promissory Notes (the "Empacadora Guarantees").

87.     USA Grain assigned the USA Grain – Empacadora Promissory Notes, the associated CCC payment guarantees and the Empacadora Guarantees to Sterling Bank.

88.     Empacadora defaulted on its payment obligations with respect to 28 USA Grain – Empacadora Promissory Notes. *See supra* ¶¶ 28-36.

89.     Upon payment of the CCC Guarantees, the CCC was subrogated to all rights held by Sterling Bank with respect to the USA Grain – Empacadora Promissory Notes including, *inter alia*, the right to obtain payment from Villareal, Blanca Villareal and Carnes pursuant to the Empacadora Guarantees.

90.     The United States has received no payment of the amounts due under the USA Grain – Empacadora Promissory Notes or the Empacadora Guarantees.  All conditions necessary to enforcement of the Empacadora Guarantees have occurred.

91.     Villareal, Almaguer and Carnes owe the United States all amounts due under the USA Grain – Empacadora Promissory Notes, an amount which, as of December 1, 2013, was $15,207,434.75.  *See* Ex. 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that the Court provide relief as follows:

(a)     judgment against Defendant Empacadora for breach of the USA Grain – Empacadora Promissory Notes in an amount to be proven at trial, but no less than $15,207,434.75;

(b)     judgment against Defendant Internacional Grain for breach of the S.A. Meat & Grain – Internacional Grain Promissory Notes, in an amount to be proven at trial, but no less than $62,390,241.14;

(c)     judgment against Defendant Saldaña for breach of the Virgo – Saldana Promissory Notes in an amount to be proven at trial, but no less than $46,109,994.38;

(d)     judgment against Defendant Central for breach of the Mid-Valley Grain – Central Promissory Notes in an amount to be proven at trial, but no less than $58,978,477.86;

(e)     judgment against Defendant Ganadera for breach of Alamo – Ganadera Promissory Notes in an amount to be proven at trial, but no less than $58,086,942.64;

(f)     judgment against Defendant Rolados for breach of the Laredo – Rolados Promissory Notes in the amount to be proven at trial, but no less than $19,623,487.80;

(g)     judgment against Defendants Villareal, Blanca Villareal and/or Carnas as jointly and severally liable for amounts due under the USA Grain – Empacadora Promissory Notes in an amount to be proven at trial, but no less than $15,207,434.75;

(h)     granting the United States its costs, disbursements, and such further relief as the Court deems just and proper.

Dated: New York, New York
       December 11, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for the United States*


                                        *B Cowart*
                                        _____
                                 By:    BRANDON H. COWART
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Fl.
                                        New York, New York 10007
                                        Telephone: (212) 637-2693
                                        Facsimile: (212) 637-2702
                                        E-mail: brandon.cowart@usdoj.gov

# EXHIBIT 1

# Amounts Owed by Defaulted Promissory Note From Due Dates Until December 1, 2013**

**Organized by Total Number of Defaulted Promissory Notes on Particular Due Date

| Importer Name | Due Dates on Defaulted Promissory Notes | Default Principal | Interest On Principal Until Date of Default | Interest On Amounts Due Since Default | Total Amounts Due |
|---|---|---|---|---|---|
| Central de Granos de la Laguna S.A. de C.V. | 4/11/2005 | $4,078,346.51 | $130,152.83 | $2,399,869.81 | |
| | 4/12/2005 | $2,148,939.46 | $64,468.18 | $1,163,883.52 | |
| | 4/18/2005 | $823,815.76 | $27,909.75 | $521,516.26 | |
| | 4/19/2005 | $1,375,545.94 | $43,144.11 | $871,456.50 | |
| | 4/25/2005 | $1,117,661.51 | $39,118.15 | $706,728.11 | |
| | 4/27/2005 | $1,582,908.34 | $55,401.79 | $1,000,279.35 | |
| | 5/2/2005 | $3,824,047.52 | $134,106.66 | $2,412,824.83 | |
| | 5/11/2005 | $1,060,219.55 | $37,107.68 | $668,992.07 | |
| | 5/16/2005 | $2,185,174.71 | $76,906.01 | $1,372,768.82 | |
| | 5/18/2005 | $1,564,412.02 | $54,754.42 | $981,979.47 | |
| | 5/23/2005 | $1,601,780.45 | $56,062.32 | $1,003,823.80 | |
| | 6/20/2005 | $2,165,933.23 | $76,228.82 | $1,345,421.79 | |
| | 6/21/2005 | $1,162,245.61 | $40,131.44 | $721,259.22 | |
| | 6/28/2005 | $849,954.65 | $29,748.41 | $526,502.28 | |
| | 7/5/2005 | $2,044,112.12 | $71,941.39 | $1,263,577.84 | |
| | 7/27/2005 | $1,617,616.47 | $56,087.78 | $998,527.48 | |
| | 8/1/2005 | $4,491,320.76 | $157,641.10 | $2,751,668.87 | |
| | 8/2/2005 | $584,135.48 | $20,355.82 | $357,674.14 | |
| | 8/8/2005 | $1,033,429.52 | $35,672.54 | $631,334.47 | |
| | 8/15/2005 | $460,311.35 | $15,944.83 | $280,594.26 | |
| Central de Granos de La Laguna S.A. de C.V. Total | | $35,771,910.96 | $1,227,884.01 | $21,978,682.89 | $58,978,477.86 |
| Compania Ganadera VI-BA Hnos. S.A. de C.V. | 4/4/2005 | $1,300,060.30 | $45,656.87 | $827,908.97 | |
| | 4/11/2005 | $2,848,690.03 | $100,374.22 | $1,809,742.43 | |
| | 4/12/2005 | $1,825,878.94 | $54,945.44 | $1,153,833.53 | |
| | 4/13/2005 | $960,569.85 | $31,910.38 | $608,659.93 | |
| | 4/18/2005 | $1,884,346.64 | $66,183.74 | $1,194,320.59 | |
| | 4/25/2005 | $3,279,914.41 | $108,725.74 | $2,069,048.99 | |
| | 4/26/2005 | $632,329.41 | $20,158.39 | $398,506.92 | |
| | 5/2/2005 | $938,284.21 | $32,839.95 | $591,981.11 | |
| | 3/13/2005 | $2,133,198.86 | $74,454.70 | $1,345,748.82 | |
| | 5/3/2005 | $1,514,177.87 | $52,996.23 | $955,018.48 | |
| | 5/9/2005 | $245,986.87 | $8,099.38 | $154,540.90 | |
| | 5/17/2005 | $1,465,476.05 | $50,310.26 | $919,577.03 | |
| | 5/31/2005 | $1,013,943.23 | $36,079.48 | $634,155.58 | |
| | 6/1/2005 | $1,179,586.26 | $41,285.52 | $737,101.34 | |
| | 6/6/2005 | $2,198,919.37 | $75,922.81 | $1,371,224.31 | |
| | 6/13/2005 | $1,063,900.54 | $37,236.52 | $662,242.18 | |
| | 6/27/2005 | $3,109,728.36 | $109,381.90 | $1,927,263.43 | |
| | 6/28/2005 | $1,585,899.32 | $55,286.93 | $982,255.96 | |
| | 8/22/2005 | $2,055,106.40 | $71,828.22 | $1,258,495.40 | |
| | 8/29/2005 | $819,574.50 | $28,144.95 | $497,140.37 | |
| | 9/2/2005 | $877,439.19 | $30,416.43 | $531,700.77 | |

| Importer Name | Due Dates on Defaulted Promissory Notes | Default Principal | Interest On Principal Until Date of Default | Interest On Principal Since Default | Interest On Amounts Due | Total Amounts Due |
|---|---|---|---|---|---|---|
| | 9/6/2005 | $1,758,965.09 | $59,880.15 | | $1,063,822.36 | |
| | 9/12/2005 | $1,265,649.15 | $43,712.25 | | $764,303.37 | |
| Compania Ganadera Vi-BA Hnos, S.A. de C.V. Total | | $35,019,330.63 | $1,201,000.55 | | $21,866,611.46 | $58,086,942.64 |
| Empacadora Vi-ba S.A. De C.V. | 6/20/2005 | $869,133.34 | $30,257.50 | | $539,684.47 | |
| | 6/24/2005 | $1,035,044.00 | $35,630.90 | | $641,631.68 | |
| | 7/12/2005 | $776,403.40 | $26,386.05 | | $478,243.73 | |
| | 7/27/2005 | $513,268.85 | $17,314.74 | | $314,562.37 | |
| | 8/3/2005 | $2,486,000.00 | $85,287.33 | | $1,520,916.46 | |
| | 10/5/2005 | $1,172,705.65 | $42,510.58 | | $729,053.79 | |
| | 10/11/2005 | $1,170,283.44 | $42,422.77 | | $726,082.58 | |
| | 10/17/2005 | $262,171.12 | $9,609.30 | | $162,394.46 | |
| | 10/24/2005 | $919,264.63 | $33,323.34 | | $567,848.27 | |
| Empacadora Vi-ba S.A. De C.V. Total | | $9,204,274.43 | $322,742.51 | | $5,680,417.81 | $15,207,434.75 |
| Granos Rolados SA de CV | 4/4/2005 | $1,071,432.83 | $37,500.15 | | $682,240.21 | |
| | 4/5/2005 | $215,100.34 | $7,528.51 | | $136,879.64 | |
| | 4/6/2005 | $322,769.36 | $11,296.93 | | $205,330.13 | |
| | 4/11/2005 | $579,579.46 | $20,397.98 | | $368,186.16 | |
| | 7/11/2005 | $1,566,475.43 | $54,826.64 | | $966,251.00 | |
| | 7/13/2005 | $516,650.86 | $18,082.78 | | $318,478.44 | |
| | 7/18/2005 | $2,467,262.81 | $86,211.48 | | $1,518,324.18 | |
| | 7/25/2005 | $1,753,066.96 | $61,698.22 | | $1,076,609.45 | |
| | 8/3/2005 | $2,234,757.49 | $78,216.51 | | $1,368,124.12 | |
| | 8/22/2005 | $1,144,112.23 | $40,043.93 | | $696,053.57 | |
| Granos Rolados SA De C.V. Total | | $11,871,207.77 | $415,803.13 | | $7,336,476.90 | $19,623,487.80 |
| Internacional Grain S.A. de C.V. | 4/6/2005 | $2,651,875.88 | $79,556.27 | | $1,439,009.50 | |
| | 4/11/2005 | $3,588,015.09 | $105,151.65 | | $1,942,605.70 | |
| | 4/18/2005 | $348,034.30 | $10,238.03 | | $188,033.26 | |
| | 4/19/2005 | $269,002.36 | $8,070.07 | | $145,370.67 | |
| | 4/25/2005 | $5,041,680.19 | $165,094.79 | | $2,983,973.59 | |
| | 4/26/2005 | $1,671,612.36 | $57,031.89 | | $1,055,769.47 | |
| | 4/27/2005 | $344,605.11 | $10,338.15 | | $185,753.64 | |
| | 5/2/2005 | $3,545,936.50 | $124,486.99 | | $2,237,428.99 | |
| | 5/9/2005 | $2,164,210.72 | $75,584.57 | | $1,362,293.28 | |
| | 5/16/2005 | $1,464,062.38 | $51,526.86 | | $919,752.17 | |
| | 5/18/2005 | $403,008.63 | $13,517.70 | | $252,611.65 | |
| | 5/31/2005 | $2,758,221.69 | $97,391.51 | | $1,724,631.72 | |
| | 6/8/2005 | $219,148.21 | $7,015.08 | | $136,238.26 | |
| | 6/13/2005 | $1,099,244.45 | $38,901.04 | | $684,499.67 | |
| | 6/20/2005 | $1,155,675.83 | $40,673.37 | | $717,875.98 | |
| | 6/21/2005 | $2,638,373.19 | $91,873.69 | | $1,637,768.93 | |
| | 6/27/2005 | $722,541.12 | $25,109.86 | | $447,614.49 | |
| | 6/28/2005 | $1,231,418.03 | $43,099.63 | | $762,798.82 | |
| | 7/11/2005 | $211,242.88 | $7,024.06 | | $130,081.04 | |
| | 7/28/2005 | $640,955.43 | $22,433.44 | | $397,038.24 | |

| Importer Name | Due Dates on Defaulted Promissory Notes | Default Principal | Interest On Principal Until Date of Default | Interest On Amounts Due Since Default | Total Amounts Due |
|---|---|---|---|---|---|
| Internacional Grain S.A. de C.V. | 8/1/2005 | $1,560,470.42 | $54,616.47 | $955,951.98 | |
| | 8/8/2005 | $969,529.58 | $33,933.54 | $592,572.85 | |
| | 8/10/2005 | $215,731.16 | $6,901.87 | $131,384.40 | |
| | 9/6/2005 | $3,214,823.31 | $113,496.32 | $1,946,697.17 | |
| Internacional Grain S.A. de C.V. Total | | $38,129,418.82 | $1,283,066.85 | $22,977,755.47 | $62,390,241.14 |
| Saldana y Gomez Granos y Semillas S.A. de C.V. | 5/17/2005 | $1,208,041.01 | $45,301.54 | $814,672.66 | |
| | 5/20/2005 | $1,157,255.56 | $42,914.89 | $779,360.69 | |
| | 5/27/2005 | $1,551,179.79 | $57,846.08 | $1,042,514.68 | |
| | 5/31/2005 | $1,182,675.91 | $44,350.35 | $793,988.24 | |
| | 6/7/2005 | $239,452.54 | $8,932.14 | $160,363.36 | |
| | 6/10/2005 | $1,104,003.09 | $41,170.12 | $738,636.72 | |
| | 6/12/2005 | $277,392.18 | $10,112.28 | $183,523.67 | |
| | 6/24/2005 | $1,152,826.02 | $42,750.63 | $767,659.84 | |
| | 6/28/2005 | $6,266,634.30 | $234,998.47 | $4,169,172.02 | |
| | 6/29/2005 | $156,597.23 | $5,872.40 | $104,149.80 | |
| | 7/12/2005 | $629,623.57 | $22,659.84 | $416,374.24 | |
| | 7/14/2005 | $247,904.98 | $9,063.56 | $163,924.51 | |
| | 7/15/2005 | $1,197,497.80 | $44,170.39 | $791,822.16 | |
| | 7/25/2005 | $206,937.22 | $7,760.15 | $138,467.02 | |
| | 7/27/2005 | $372,037.23 | $13,461.53 | $244,872.02 | |
| | 7/29/2005 | $2,332,792.02 | $85,503.58 | $1,535,748.68 | |
| | 8/1/2005 | $2,184,328.41 | $81,912.32 | $1,437,174.33 | |
| | 8/2/2005 | $461,311.12 | $17,243.17 | $303,383.48 | |
| | 8/8/2005 | $648,139.72 | $24,305.24 | $425,461.53 | |
| | 8/12/2005 | $730,573.15 | $27,154.23 | $478,788.99 | |
| | 8/17/2005 | $245,752.50 | $9,139.21 | $160,794.19 | |
| | 8/22/2005 | $1,146,643.45 | $42,999.13 | $749,226.98 | |
| | 8/29/2005 | $595,308.93 | $21,358.35 | $387,472.60 | |
| | 9/2/2005 | $621,964.70 | $23,064.52 | $404,755.84 | |
| | 10/11/2005 | $1,212,884.76 | $45,483.18 | $779,401.64 | |
| Saldana y Gomez Granos y Semillas S.A. de C.V. Total | | $27,129,757.19 | $1,010,527.30 | $17,969,709.89 | $46,109,994.38 |
| Grand Total of All Amounts Due on Defaulted Notes | | $157,125,899.80 | $5,461,024.35 | $97,809,654.42 | $260,396,578.57 |